# Exhibit A

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | SUMMONS** | DOCKET NUMBER<br>CH- 20-0311-1 |
|---|---|---|
| **Plaintiff**<br>Visanji and Jaya Gala | | **Defendant**<br>Tesla Motors, et. al. |

**TO:** (NAME AND ADDRESS OF DEFENDANT)
Tesla Motors TN, Inc.
c/o C.T. Corporation System
300 Montvue Road
Knoxville, TN 37919

**Method of Service:**
☐ Shelby County Sheriff
☐ Private Process Server
☒ Out of County Sheriff*
☐ Secretary of State*
☐ Comm. Of Insurance*
☐ Certified Mail
☐ Other
*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

**Attorney for Plaintiff or Plaintiff if filing Pro Se:**
(Name, address & telephone number)
Kevin Snider / Snider & Horner
9056 Stone Walk Place
Germantown, TN 38138
(901) 751-3777

ISSUED 3 of March 20 20

W. Aaron Hall, Clerk and Master
By: _____
Deputy Clerk & Master
140 Adams, Room 308   Memphis, TN 38103

**TO THE SHERIFF:**

**Came to hand**
_____ day of _____, 20 ___
Sheriff

**CERTIFICATION (IF APPLICABLE)**

I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case.

W. Aaron Hall, Clerk & Master
By: _____
D. C. & M.

**Submit one original and one copy for each defendant to be served.

♿ If you need accommodations because of a **disability**, please call the ADA Coordinator at (901) 222-2357.
For questions regarding scheduling or filing, please contact the court.

**Notice of Personal Property Exemption:**
TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the _____ day of _____ MAR 1 3 2020, 20 ____ at __0800__ am/pm a copy of the summons and a copy of the Complaint to the following Defendant _Tesla Motors Inc, % CT Corp_

at _____

__REFUSED__ _____ By: __RHONDAE STEELE / 400 MAIN AVE.__
TO SIGN
Signature of person accepting service                Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant _____ because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s): _____.

This ____ day of _____, 20 _____

By: Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the ____ day of _____, 20 ____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH- _____ to the defendant _____. On the ____ day of _____, 20 ____, I received the return receipt, which had been signed by _____ on the ____ day of _____, 20 ____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this ____ day of _____, 20 ____ . <br><br> Signature of ____ Notary Public or ____ Deputy Court Clerk: <br><br> My Commission Expires: | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|
| ATTACH RETURN <br><br> RECEIPT HERE <br><br> (IF APPLICABLE) | |

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

VISANJI GALA, and
JAYA GALA,

    Plaintiffs.

VS.

    No. _____
    Div.
    **JURY DEMANDED**

TESLA MOTORS TN, INC., and
TESLA MOTORS INC.,

    Defendants.

CH-20-0311
Part 1

[Filed stamp: SHELBY COUNTY CHANCERY COURT, MAR - 3 2020, W. AARON HALL, C & M]

## COMPLAINT FOR RESCISSION AND DAMAGES

COMES NOW, the Plaintiffs, Visanji Gala and Jaya Gala (hereinafter referred to as "Plaintiffs"), by and through counsel of record, Kevin A. Snider of Snider & Horner, PLLC for its cause of action would state as show as follows:

### JURISDICTION

1. The Plaintiffs, Visanji Gala and Jaya Gala (hereinafter referred to as "Plaintiffs"), are adult resident citizens of Shelby County, Tennessee.

2. The Defendant, Tesla Motors TN, Inc., (hereinafter referred to as "Dealer and/or Defendant(s)") was and is a corporation, a supplier and merchant that does business in Shelby County, Tennessee and may be served with process through C.T. Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919.

*- Page 1-*

3. The Defendant, Tesla Motors, Inc., (hereinafter referred to as "Manufacturer and/or Defendant(s)") was and is a corporation, a supplier and merchant that does business in Shelby County, Tennessee and may be served with process through C.T. Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919.

4. At all times relevant, Plaintiff was a consumer within the meaning of the Magnuson-Moss Warranty Act as stated in 15 U.S.C. Section 2301 et. seq. and/or the Tennessee Consumer Protection Act of 1977 as stated in Tennessee Code Annotated Section 47-18-101 et. seq.

5. At all times relevant, Defendants were engaged in the business of leasing and/or selling and/or servicing and/or manufacturing new and used motor vehicles within the jurisdiction of this Court.

6. The acts complained of took place in Shelby County, Tennessee.

## FACTUAL ALLEGATIONS

7. On or about October 9, 2019, the Plaintiffs leased a 2019 Tesla Model S (VIN No. 5YJSA1E28KF348087) from Dealer and made and warranted by Manufacturer. A copy of the Lease Agreement is attached hereto and incorporated herein by reference as Exhibit A.

8. At the time of their lease, the Plaintiffs were assured by the Defendants that the vehicle was a premiere vehicle of impeccable quality; was safe to drive and fit for its normal and ordinary purpose; equipped with sophisticated and unmatched safety mechanisms including automatic emergency braking; and completely warranted for such.

9. The Plaintiffs, impressed and in reliance upon these representations and assurances, executed the above-mentioned lease and made an initial payment to the Dealer of $7,596.31.

10. On or about October 16, 2019 (approximately one week after taking possession of the vehicle), the Plaintiff was in his driveway at his residence in Germantown, Tennessee and was attempting to pull the vehicle into his garage door stall number three while making a ninety degree turn at an extremely slow pace. Suddenly and without warning when the steering wheel was at forty-five degrees, the vehicle began to rapidly accelerate on its own to a dangerous and unsafe speed and the "sophisticated" automatic emergency braking system failed to engage or stop the vehicle. In fact, the Plaintiff tried to engage the manual or foot braking system that likewise failed to engage or work. As a result, the vehicle through its own volition went through the garage door stall number one of his residence and slammed into his home causing substantial damage.

11. At that time and continuing thereafter, the Plaintiff began contacting the Defendant who essentially claimed that there was "nothing wrong with the vehicle" and "operated how it normally should". Moreover, the Defendant has refused and/or otherwise failed to take any action.

12. Since that time and continuing to this date, the Plaintiff became aware of numerous other instances of Tesla owners who have experienced the same or similar situations. In fact, upon information and belief, the National Transportation Safety Board and/or other regulatory agencies and/or the Defendants have determined that this vehicle, on occasion, can have the types of issues and problems that the Plaintiff is complaining of.

13. Based upon the above, the Plaintiff does not feel safe in using and/or operating the vehicle and would aver that it fails its essential purpose and/or is not fit for its intended purpose. Moreover, the Plaintiff has lost all confident in the vehicle and the Defendants and would aver that the vehicle is unsafe and dangerous and have requested that the Defendants rescind the lease and refund their money to which the Defendant has refused and/or otherwise failed to do.

14. As a sole, direct and proximate cause of the Defendants' actions and/or omissions and/or refusal to rescind the lease, the Plaintiffs have and continue to incur substantial damages.

### FIRST CLAIM – RESCISSION

15. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

16. The Plaintiffs intended to lease a vehicle which would function for its intended purpose and according to the representations and assurances that they were provided.

17. Instead, the Plaintiffs are now leasing a vehicle that is unsafe and dangerous, fails to properly work, is not fit for its intended purpose, and/or fails its essential purpose.

18. The Plaintiffs would therefore ask this Court to rescind their lease of this inadequate vehicle.

### SECOND CLAIM - FRAUD/MISREPRESENTATION

19. The allegation of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

20. The Defendants and/or agents acting on their behalf, engaged in intentional fraud and/or misrepresentations when they made false representations of the capabilities of the vehicle; that the vehicle was a premiere vehicle of impeccable quality; that the vehicle was safe to drive and fit for its normal and ordinary purpose; that the vehicle was equipped with sophisticated and unmatched safety mechanisms including automatic emergency braking; and/or that the vehicle was completely warranted for such and that the vehicle would work properly.

21. The Defendants knew of the falsity and/or made it recklessly with the intent to deceive the Plaintiffs and/or induce them into leasing the vehicle. Defendants' actions were intentional, willful, malicious, and/or reckless and entitle the Plaintiffs to punitive damages.

22. Alternatively, the Defendants engaged in negligent fraud and/or misrepresentation by the above-mentioned representations and assurances.

23. The Plaintiffs reasonably relied upon the information provided to them by the Defendants and would not have leased this vehicle if they had known otherwise.

## THIRD CLAIM - BREACH OF CONTRACT/WARRANTY

24. This claim is for breach of contract/warranty against the Defendant.

25. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

26. The parties contracted to lease the vehicle to the Plaintiffs. The Defendant and/or their agents, employees or other individuals acting on their behalf, breached said contract and/or warranty when the Defendants delivered to the Plaintiffs an unsafe and dangerous vehicle; delivered to the Plaintiffs a vehicle that was not fit for its normal and customary purposes; and/or refused and/or otherwise failed to diagnose, correct, and/or otherwise fix the vehicle; refused and/or otherwise failed to honor their warranty and assurances.

### FOURTH CLAIM – FEDERAL WARRANTY ACT

27. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

28. This claim is for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et. seq. (hereinafter referred to as "Warranty Act") by the Defendants.

29. The Defendants are in violation of the Warranty Act by their failure to comply with its warranty obligations stated in regard to the performance, repair and/or replacement of the vehicle.

### FIFTH CLAIM – BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

30. The allegation of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

31. The Defendant leased the Plaintiffs a vehicle which was not merchantable in that the vehicle was not fit for the ordinary purposes for which it would be used.

### SIXTHTH CLAIM - IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR USE

32. The allegation of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

33. At the time the contract papers were signed, Defendant had reason to know that the Plaintiffs needed a car which would provide safe and reliable service and that the Plaintiffs were relying on Defendant's skill and judgment to select or furnish a safe and suitable vehicle.

34. At the time the Defendant manufactured, marketed, and/or leased the vehicle, the Defendant had reason to know that consumers like the Plaintiffs would lease vehicles expecting safe and reliable service and that the Plaintiffs were relying on the Defendant's representations, assurances, and/or warranties about the capabilities of the vehicle.

### DEMAND FOR A JURY TRIAL

The Plaintiffs demand trial by jury on all issues which may be determined by a jury.

WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

1. That the Defendants rescind the contract with the Plaintiffs to lease the vehicle and award additional compensatory and/or nominal damages.

2. Alternatively, if rescission is not awarded, the Defendants pay compensatory damages to the Plaintiffs in an amount of not less than $50,000.00 or an amount to be proven at trial.

3. That the Plaintiffs be awarded a judgment against the Defendants, in the minimum amount of $150,000.00 in punitive damages.

4. That the Plaintiffs be awarded their reasonable attorney fees incurred in this matter against the Defendants, based upon their violations of the Magnuson-Moss Warranty Act.

5. That the Plaintiffs be awarded prejudgment interest.

6. For such other relief, both general and specific, to which the Plaintiffs may be entitled.

THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF, NO OTHER JUDGE OR CHANCELLOR HAS REFUSED THE RELIEF SOUGHT.

Respectfully Submitted,

SNIDER & HORNER, PLLC

By: _____
Kevin A. Snider (B.P.R. No. 18231)
Attorney for Plaintiffs
9056 Stone Walk Place
Germantown, TN 38138
(901) 751-3777
(901) 759-0041 (Fax)

Serial: RN109575129-TLT-05-20191010165738

# TESLA Exhibit
## LEASE AGREEMENT

**Lessee / Co-Lessee ("You") Name and Address**
Visanji T Gala
2173 E GLENALDEN DR
GERMANTOWN, TN 38139
Shelby County

**Garaging Address if Different**

**Lessor ("We," "us," "our")**
Tesla Motors TN, Inc
1641 Westgate Circle
Brentwood, TN 97027

### 1. Description of Leased Vehicle ("Vehicle") and Trade-in (If applicable)

| | Year | Make | Model | Vehicle Identification Number | Odometer |
|---|---|---|---|---|---|
| A. Leased Vehicle: New | 2019 | Tesla | Model S | 5YJSA1E28KF348087 | 50 |
| | Year | Make | Model | Agreed Upon Value | Payoff Amount | Net Value (Item 7A or 6I and 12G) |
| B. Trade-in | N/A | N/A | N/A | $ 0.00 | $ 0.00 | $ 0.00 |

### Federal Consumer Leasing Act Disclosures

**2. Amount Due at Lease Signing or Delivery** (itemized below)*
$ 7,596.31

**3. Monthly Payments**
Your first monthly payment of $ 1,276.82 is due on 10/08/2019, followed by 35 payments of $ 1,276.82 due on the 8th of each month. The total of your monthly payments is $ 45,965.52

**4. Other Charges** (not part of your monthly payment)
Disposition fee $ 395.00
Total $ 395.00

**5. Total of Payments** (the amount you will have paid by the end of the lease)
$ 52,680.01

### 6. Amount Due at Lease Signing or Delivery
A. Capitalized cost reduction — $ 4,964.06
B. First monthly payment — $ 1,276.82
C. Registration fees — $ 140.00
D. License fees — $ 0.00
E. Sales/use tax — $ 132.13
F. Sales tax on capitalized cost reduction — $ 372.31
G. Acquisition fee — $ 695.00
H. Tire fee — $ 5.00
I. Negative trade-in equity payment — $ 0.00
J. Other: Title Fee — $ 11.00
K. Other: Wheel Tax — $ 0.00
Total — $ 7,596.31

### 7. How the Amount Due at Lease Signing or Delivery Will be Paid
A. Net trade-in allowance — $ 0.00
B. Rebates and noncash credits — $ 0.00
C. Amount applied from deposit — $ 2,500.00
D. Amount to be paid in cash — $ 5,096.31
Total — $ 7,596.31

### 8. Your Monthly Payment is Determined as Shown Below

A. **Gross Capitalized Cost.** The agreed upon value of the vehicle ($ 92,690.00) and any items you pay for over the lease term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (see item 12 for an itemization of this amount). $ 92,690.00
B. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. − $ 4,964.06
C. **Adjusted Capitalized Cost.** The amount used in calculating your base monthly payment. = $ 87,725.94
D. **Residual Value.** The value of the vehicle at the end of the lease used in calculating your base monthly payment. − $ 55,635.20
E. **Depreciation and Any Amortized Amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term. = $ 32,090.74
F. **Rent Charge.** The amount charged in addition to the depreciation and any amortized amounts. + $ 10,667.79
G. **Total of Base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge. = $ 42,758.53
H. **Lease Payments.** The number of payments in your lease. ÷ 36
I. **Base Monthly Payment.** = $ 1,187.74
J. **Monthly Sales/use Tax.** + $ 89.08
**Total Monthly Payment.** = $ 1,276.82

**Early Termination.** You may have to pay a substantial charge if you end the lease early. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

9. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of total miles over the scheduled lease term of 45,000 miles, at the rate of 25 cents per mile.
10. **Purchase Option at End of Lease Term.** You will have an option to purchase the vehicle at the scheduled end of the lease for $ 55,985.20, plus official fees and taxes.
11. **Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

### 12. Itemization of Gross Capitalized Cost
A. Agreed upon value of vehicle as equipped — $ 92,690.00
B. Title fees — $ 0.00
C. Registration fees — $ 0.00
D. License fees — $ 0.00
E. Sales/use tax — $ 0.00
F. Maintenance agreement — $ 0.00
G. Net trade-in balance — $ 0.00
H. Sales tax on capitalized cost reduction — $ 0.00
I. Other — $ 0.00
Total (A to I) — $ 92,690.00

© 2014 Tesla Finance LLC

TN04102019

Page 1 of 3

**13. Estimated Official Fees and Taxes You Must Pay During the Lease**

$ 4,131.32 is our estimate of the total of official fees and taxes you will have to pay over the lease term. The actual amount may be higher or lower, depending on the tax rates in effect or the value of the vehicle at the time a fee or tax is assessed. (See item 23 for a description of your responsibility for official fees and taxes.)

| 14. Lease Date | 15. Scheduled End of Lease Term | 16. Lease Term (Number of Months) |
|---|---|---|
| 10/08/2019 | 10/08/2022 | 36 |

**17. Agreement.** You agree to everything in this lease, including items 2-11, and are not buying a vehicle. We intend to assign this lease to Tesla Lease Trust. Tesla, Inc. and Tesla Finance LLC helped arrange this lease, and Tesla Finance LLC will service it.

**18. Payments and Late Charge.** You will pay us any amounts under this lease when they become due, which may be after the lease ends. A late fee of 5% of any amount we do not receive by 10 days after the due date will be charged.

**19. Insurance.** You must insure the vehicle through policies and insurers acceptable to us from the delivery of the vehicle to you until you return it to us, and show us proof if we ask. The liability insurance must cover at least $50,000, $100,000 and $300,000 for property damage, for bodily injuries to any one person, and for any one accident, respectively. The physical damage insurance must cover the vehicle's full value (payable in cash and not by a replacement vehicle) and no deductible under it may exceed $2,500. The policies must cover the driving of the vehicle by you or anyone likely to do so and must show as additional insureds us and anyone else we designate. We will be entitled to any insurance proceeds for damage, theft or destruction of the vehicle. We also have the right to endorse your name on any insurance check or settlement you receive and may speak to your insurance company about your coverage. Failure to comply with these insurance requirements may result in us force-placing insurance coverage on the vehicle. All costs and fees for force-placed insurance will be charged to the lessee.

**20. Delivery.** By signing below, you acknowledge the delivery to, and acceptance by, you of the vehicle, and you assume the risks of loss or damage.

**21. Warranty.** The only warranties on the vehicle are the Tesla New Vehicle Limited Warranty provided to you (which is separate from this lease and states any coverage limits) and a warranty that the vehicle conforms to the description in this lease.

**22. Maintenance and Use.** You will keep the vehicle in good working order and repair and follow any maintenance schedules or recall advisories we or our affiliate may notify you of. You are responsible for all operating costs. You will not use the vehicle or allow it to be used illegally, outside of your insurance coverage, or for transport or rental for payment. You will notify us if the vehicle is out of the state where it is first titled for more than 30 days. You will keep the vehicle free from liens or claims of, or confiscation by, others.

**23. Fees, Fines and Taxes.** You will pay all fees, fines and taxes mandated by the government, and road tolls, related to the vehicle or its use (except our net income taxes), including those accruing from your failure to pay when due. We will charge you for any such amounts that we pay on your behalf. Additionally, any changes in tax that may occur throughout the term of the lease as a result of lessee moving or governmental changes in tax rates will be the responsibility of the lessee.

**24. Return at Scheduled Lease End.** You will return the vehicle at the scheduled lease term end to the place we designate, unless you purchase it (see item 26). You will pay us: (i) any excess mileage charge (see item 9); (ii) any excess wear charge (see item 25); and (iii) any amounts due under item 30. For each month you keep the vehicle beyond the scheduled lease term end, you will be in default and will also pay us the monthly payment amount.

**25. Excess Wear.** The charge for excess wear will be our estimated or actual cost of repairing wear beyond that reasonably expected with ordinary, everyday use and maintenance according to this lease. It includes: (i) parts, accessories and vehicle specifications present in or on the vehicle or provided at delivery being incomplete, modified or replaced with items of inferior quality or design;(ii) any tire with less than 1/8-inch of tread or not part of a matching set of four; (iii) dents, scratches, gouges or cracks in the vehicle's external parts or glass; (iv) torn or burned interior parts or upholstery; (v) inoperative mechanical or electrical components; and (vi) any damage or neglect resulting from your failure to follow any maintenance schedules or recall advisories we or our affiliate may notify you of.

**26. Option to Purchase.** You may buy the vehicle "AS IS," either at the scheduled lease term end by paying the amount in item 10 or during the lease term by paying the adjusted lease balance (see item 28) plus, in each case, any amounts due under item 30. If you buy the vehicle, you will re-title and re-register it in your name as soon as possible.

**27. Terminating the Lease Early.** This lease may be ended before its scheduled term end by you for any reason, or by us if: (i) you default on this lease (see item 32); or (ii) the vehicle is a total loss; or (iii) you die with no surviving lessee. You will have to pay any early end liability (see items 28 and 29).

**28. Early End Liability.** If the lease ends early and you do not purchase the vehicle under item 26, you will pay the amount of any excess of the "adjusted lease balance" over the "realized value" (see below). However, if such excess is greater than the sum of the following, you will pay such sum instead: (i) all monthly lease payments not yet due plus (ii) any excess mileage charge (see item 9) plus (iii) any excess wear charge (see item 25). Either way, you will also owe us any amounts due under item 30.

- **Adjusted Lease Balance:** The adjusted lease balance on any date is the adjusted capitalized cost (see item 8.C) less all depreciation/ amortization through that date. We calculate the split between (i) depreciation/amortization and (ii) rent in each monthly payment using the "constant yield method," a written explanation of which will be provided to you upon request. Our calculations assume that rent charges for each month are earned in advance, that your lease payments are received on their due dates and that the lease ends on the scheduled end date.

- **Realized Value:** If: (i) we keep the vehicle, the vehicle's wholesale fair market value; or (ii) we dispose of the vehicle, the price we receive (including any insurance settlement we receive where "gap protection" under item 29 does not apply). **Appraisal Right**: However, you may pay for an independent third party agreeable to us to conduct a professional appraisal of the wholesale value of the vehicle that could be realized at sale, in which case the "realized value" will instead be such appraised value.

**29. Gap Protection.** If your vehicle is a total loss and we get a settlement under your insurance policy that complies with this lease, you will not owe an early end liability under item 28. Instead, if such settlement is less than the adjusted lease balance (see item 28), you will owe the difference (up to your insurance deductible) plus any amounts due under item 30. We will credit you for any excess of the insurance settlement over the adjusted lease balance.

**30. Other Amounts Due at Lease End.** You will owe us the following when this lease ends: (i) any monthly payments already due and unpaid at such time; (ii) any official fees and taxes for the lease end (and vehicle purchase, if applicable); and (iii) any other amounts due and unpaid under this lease.

**31. Odometer Disclosure.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or you make a false statement.

© 2014 Tesla Finance LLC                    TN04102019                                Page 2 of 3

Serial: RN109575129-TLT-05-20191010165738

32. **Default and Remedies.** You will be in default if you breach any agreement in this lease, provide false or misleading information in your credit application, or do anything else the law says is a default. If you are in default, we may, after any legally required notice or waiting period: (i) end this lease and charge an early end liability (see items 28 and 29); (ii) do anything to protect our interest in the vehicle, including repossessing the vehicle using legally permitted means; (iii) locate the vehicle using electronic means; (iv) use the vehicle's license plates to move it; (v) sue you for damages or to get the vehicle back; and/or (vi) charge you for amounts we spend taking these actions.

33. **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief), then that claim or remedy (and only that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc., P.O. Box 15430, Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

34. **Indemnification.** You agree to indemnify us and hold us and our assignees, agents, and insurers harmless from and against any and all liabilities, damages, claims and expenses, including reasonable attorneys' fees to the extent permitted by law, arising out of the condition, maintenance, use and operation of the vehicle, including claims under a strict liability doctrine.

35. **Assignment.** Any sale of the vehicle and assignment of this lease will not be considered to change materially your duties, burden, or risk under this lease. If we assign this lease, you will not receive notice of assignment. **You will not sublease or assign this lease without our prior written consent.**

36. **Privacy Policy.** Our Privacy Policy is incorporated into this lease and can be viewed at www.tesla.com/about/privacy.

37. **Electronic Signatures and Conversion.** If signed electronically, the authoritative copy of this lease will be held in a designated document management system, but we may convert it into a paper copy marked "Original" onto which your electronic signature is affixed. If we do, the affixed signature will be your legally valid and binding signature and the paper copy alone will be the original of this lease.

38. **Enforceability.** Invalidation of any part of this lease will not affect any other part. No delay or abstention in enforcing our rights will be a waiver.

39. **Entire Agreement.** This lease contains the entire agreement of the parties. Any changes to this lease must be in writing and must be signed by us.

NOTICE TO LESSEE: (1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this lease.

This lease is entered into as of the date shown in item 14. By signing below, you agree to the terms of this lease, confirm that before you signed this lease, you were free to review and keep a copy, and acknowledge that you have read all pages of this lease. You also acknowledge receipt of a true and completely filled-in copy of all pages of this lease at the time you signed it.

Lessee's Signature: X *Visanji T Gala*
By: Visanji T Gala

Co-Lessee's Signature: X _____
By:

The authorized signature of the lessor below has the effect of: (1) accepting the terms and conditions of this lease; and (2) assigning to Tesla Lease Trust or its successors and assigns all right, title and interest in, and to the vehicle and this lease.

Lessor's Signature:   TESLA MOTORS TN, INC.

By: X _____
Yaron Klein
Treasurer

© 2014 Tesla Finance LLC        TN04102019                Page 3 of 3