IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| VISANJI GALA, and JAYA GALA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:20-cv-2265-SHM-tmp |
| | ) |
| TESLA MOTORS TN, INC., and | ) |
| TESLA MOTORS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Before the Court is Defendants Tesla Motors TN, Inc. and Tesla Motors, Inc.'s ("Defendants") May 15, 2020 Motion to Compel Arbitration (the "Motion to Compel"). (D.E. No. 11.) Plaintiffs Visanji Gala and Jaya Gala ("Plaintiffs") responded on May 21, 2020. (D.E. No. 13.) Defendants replied on June 8, 2020. (D.E. No. 15.)

For the following reasons, Defendants' Motion to Compel is **GRANTED.**

**I.  Background**

Plaintiffs bring six claims: rescission, fraud, breach of contract/warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular use, and Magnuson-Moss Warranty Act violations, 15 U.S.C. §§ 2301, et seq. (D.E. No. 1-2, 4-7 ¶¶ 15-34.)

On October 9, 2019, Plaintiffs leased a 2019 Tesla Model S from Defendants.  (D.E. No. 1-2, p. 2 ¶ 7.)  The Motor Vehicle Order Agreement contains the following arbitration provision:

> Agreement to Arbitrate.  Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

> If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

> We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence.  To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties.  The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles.  In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.  If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

> If you prefer, you may instead take an individual dispute to small claims court.

> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.;

P.O. Box 15430; Fremont, CA 94539- 7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.  [D.E. No. 11-3, 3.]

The Lease Agreement contains an arbitration clause with identical language.  (See D.E. No. 11-14, p. 3, ¶ 33.)

The Tesla Model S was valued at $92,690.  (Id. at 1.)  The monthly payments totaled $45,965.52 over the life of the lease. Plaintiffs paid $4,964.06 as a Capitalized Cost Reduction and $1750.00 in fees and taxes.  (Id.)  Plaintiffs were to pay $52,680.01 by the end of the lease.  (See id.)  The Gross Capitalized Cost of the Tesla was based entirely on the value of the vehicle.  (See id.)

Plaintiffs allege that about a week after they signed the lease the vehicle accelerated on its own and crashed into their garage.  (D.E. No. 1-2, p. 3 ¶ 10.)  On March 3, 2020, Plaintiffs sued Defendants in the Chancery Court of Shelby County, Tennessee, seeking monetary damages of not less than $50,000. (See id.)  Plaintiffs sought rescission of the contract, or compensatory damages of not less than $50,000.  (Id. at p. 7, ¶¶ 1-2.) Plaintiffs also sought $150,000 in punitive damages and reasonable attorney's fees under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2).  (Id. at p. 8, ¶¶ 3-4.)  On March 13,

2020, Defendants received Plaintiffs' Summons and Complaint. (D.E. No. 1 at 1.)

On April 9, 2020, Defendants removed the case to this Court. (D.E. No. 1.)  The bases for removal were that Plaintiffs sought $50,000 or more in damages under the Magnuson-Moss Act and that Plaintiffs' state and federal claims derived from a common set of facts.  (Id. at 2-3.)

On April 10, 2020, Defendants filed their Corporate Disclosure Statement.  (D.E. No. 8.)  Defendants disclosed that Tesla Motors TN, Inc., is a wholly owned subsidiary of Tesla, Inc., which is a publicly traded company with no parent corporation owning 10% or more of its stock.  (Id. at ¶1-2.) Defendants represented that Plaintiffs had incorrectly named Tesla Motors, Inc., and that Tesla, Inc. was the appropriate Defendant.  (Id.)

On April 13, 2020, Defendants filed a Consent Motion for an Extension of Time to Respond to the Complaint under Rule 6 and Rule 81.  (D.E. No. 9, 1.)  Defendants represented that the COVID-19 pandemic had disrupted normal business operations and was good cause for a reasonable extension of time.  (Id. at 2, ¶ 4.)  Plaintiffs consented.  (Id. at 2, ¶ 5.)  On April 16, 2020, the Court granted Defendants' Motion and extended the time to respond to May 15, 2020.  (D.E. No. 10.)

On May 15, 2020, Defendants filed this Motion to Compel Arbitration. (D.E. No. 11.) Defendants contend that Plaintiffs are bound by the arbitration provisions in the Motor Vehicle Order and Lease Agreements and that the Court should dismiss Plaintiffs' Complaint and compel arbitration. (Id. at 1.)

## II.  Jurisdiction and Choice of Law

### A. Jurisdiction

The Court has federal question jurisdiction over Plaintiffs' Magnuson-Moss Warranty Act claim and supplemental jurisdiction over all other claims. The Magnuson-Moss Warranty Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to "bring suit for damages and other legal and equitable relief." 15 U.S.C. §2310(d)(1). The Court has jurisdiction when the amount in controversy is $50,000 or more. See 15 U.S.C. § 2310(d)(3)(B) (The court lacks jurisdiction "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit"). Finance charges are not included in determining the amount in controversy. Golden v. Gorno Bros. Inc., 410 F.3d 879, 885 (6th Cir. 2005). Plaintiffs seek monetary damages of not less than

$50,000.  (D.E. No. 1-2, p. 7 ¶¶ 2.)  The Court has federal question jurisdiction.

The Court has supplemental jurisdiction over Plaintiffs' state-law claims.  Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over related claims that "form part of the same case or controversy under Article III of the United States Constitution."  All of Plaintiffs' claims relate to the lease of the vehicle.  (See D.E. No. 1-2, pp. 4-7, ¶¶ 15-34.)

**B. Choice of Law**

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, et seq., arbitration agreements may be invalid on grounds that "exist at law" for the revocation of contracts. See 9 U.S.C. § 2. "In other words, whether an arbitration clause is enforceable is governed by state law." Stutler v. T.K. Constructors, Inc., 448 F.3d 343, 345 (6th Cir. 2006). State law determines the applicability of contract defenses such as fraud, duress, or unconscionability. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); see Floss v. Ryan's Fam. Steak House, Inc., 211 F.3d 306, 314–15 (6th Cir. 2000).

When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  The Motor Vehicle Order Agreement adopts the law of the state in which Defendants are licensed to sell

motor vehicles that is nearest to Plaintiffs' address. (D.E. 11-3, 3.) Both parties assume that Tennessee law applies. The Court will apply Tennessee substantive law.

## III. Standard of Review

The FAA strongly favors arbitration. See EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). The Court is required to determine whether there is a valid arbitration clause and whether the claims fall within the scope of the agreement. Landis v. Pinnacle Eye Care, LLC., 537 F.3d 559, 561 (6th Cir. 2008). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

When there is a written agreement to arbitrate and a party refuses to arbitrate, the other party may petition the district court to order the refusing party to comply with the terms of the agreement. See 9 U.S.C. § 4. "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

7

The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civil action. See Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (citing Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129-30 (2d Cir. 1997)). The movant bears the burden to establish the existence of "a binding agreement to arbitrate." In re First Thermal Sys., Inc., 182 B.R. 510, 513 (Bankr. E.D. Tenn. 1995). If that showing is made, the burden shifts to the nonmovant to demonstrate that the validity of the agreement is "in issue." Great Earth Cos., 288 F.3d at 889. To show that the validity of an arbitration agreement is "in issue," "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Id.

## IV.  Analysis

Defendants ask the Court to compel arbitration.  Plaintiffs respond that the arbitration clause is invalid because it is vague and Defendants have waived their right to arbitration.

### A.   Agreement to Arbitrate

Defendants have met their initial burden to establish that there is a binding agreement to arbitrate.  Clicking a button to accept a contract online is a valid method of signing a contract. See Sgouros v. TransUnion Corp., 817 F.3d 1029, 1033-1034 (7th Cir. 2016) ("Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance

of a contract."). Tennessee law recognizes the validity of electronically signed contracts. Tenn. Code Ann. § 47-10-107(d) ("If a law requires a signature, an electronic signature satisfies the law.") Plaintiff Visanji Gala had to agree to the Motor Vehicle Order Agreement, which included the arbitration agreement, to select the Place Order button on the Tesla website. (See D.E. No. 11-4, ¶¶ 2-4.) Visanji Gala also had to agree to the Lease Agreement, which included the arbitration agreement, and he signed the Lease Agreement electronically on the Tesla website. (See D.E. No. 11-8, ¶¶ 4-12; D.E. No. 11-14.)

Plaintiff Jaya Gala is bound by the Agreements under the doctrine of equitable estoppel. "A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct" benefit from a contract containing an arbitration clause.'" Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000) (quoting American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999). Plaintiffs allege in their Complaint that "the Plaintiffs leased a 2019 Tesla Model S" "from Dealer and made and warranted by Manufacturer." (D.E. No. 1-2, p. 2 ¶ 7.) Jaya Gala is therefore bound by the Lease Agreement because she has admitted that she entered into it. See Raebel v. Tesla, Inc., 451 F.Supp. 3d 1183, 1189 (D. Nev. 2020) ("Having already

admitted that both Plaintiffs entered into the Agreement with Tesla, Plaintiffs cannot now claim that Wagner never assented to the Agreement.").

Plaintiffs do not dispute the existence of the Lease Agreement, nor do they argue that Jaya Gala is not bound because she did not sign the Agreement. (See D.E. No. 12-1, 5.) Instead, Plaintiffs argue that the arbitration agreement is void for vagueness and that Defendants have waived their right to arbitration. (Id. at 5-12.)

Defendants have met their initial burden to show that there is a binding agreement to arbitrate. As explained below, Plaintiffs have not met their burden to show that the validity of the arbitration agreement is at issue.

### B. Vagueness

Plaintiffs' argument that the arbitration agreement is void for vagueness is not well taken. Plaintiffs argue that the arbitration agreement is vague based on the clause providing that, "[i]f you prefer, you may instead take your individual dispute to small claims court." (See D.E. No. 11-3, 3.) Plaintiffs contend that the small claims court provision conflicts with the mandatory arbitration provision and that the phrase "small claims court" could have multiple meanings.

Provisions that cases may be heard by small claims courts are common in arbitration agreements. See e.g., AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 337 (2011) (the arbitration agreement contained the clause "that either party may bring a claim in small claims court in lieu of arbitration"); Strawn v. AT&T Mobility, Inc., 593 F.Supp. 2d 894, 895 (S.D. W.Va. 2009) ("Notwithstanding the foregoing, either party may bring an individual action in small claims court"); Kinney v. Advance America, C.A. No. 4:07-3532; 2008 WL 4191944 at *10 (D. S.C., Sept. 5, 2008) (arbitration provision stating "YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE…").

The American Arbitration Association recommends that arbitration agreements permit cases to be heard by small claims courts. Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868, 879 (11th Cir. 2005) (the American Arbitration Association "expressly states that consumer arbitration agreements, like those at issue here, should offer all parties the option of seeking adjudication in a small claims tribunal"). Provisions in arbitration agreements allowing a case to be heard by small claims courts are beneficial to consumers. See Cicle v Chase Bank USA, 583 F.3d 549, 555 (8th Cir. 2009) ("Small claims court provides 'a practical remedy' -- an alternative venue for vindication of Cicle's rights with a judicial process

11

specifically designed for claims like hers."); _Jenkins_, 400 F.3d. at 879 ("the provision providing access to small claims tribunals was intended to benefit, not injure, consumers").

The provision allowing claims to be heard by a small claims court does not make the arbitration agreement vague. Plaintiffs do not cite any case where another court has held an arbitration agreement vague on the basis of a similar provision. (_See_ D.E. No. 12-1, 5-8.) The provision permits "an alternative venue" for some claims. _See Cicle_, 583 F.3d at 555. The "small claims court" provision in this case is permissive: "if [plaintiffs] prefer, [they] may instead take [their] individual dispute to small claims court." (_See_ D.E. No. 11-3, ¶ 13.) Plaintiffs argue that the "small claims court" provision conflicts with other parts of the arbitration agreement that provide the case will not be heard by a judge. (_See id._) Plaintiffs' argument focuses on a purported conflict between provisions, rather than a vague provision. The permissive language of the "small claims court" provision demonstrates that it does not conflict with provisions of the arbitration agreement that state the case will not be heard by a judge.

The reference to "small claims court" is not vague. There is a common definition of a "small claims court." That definition includes more than the monetary amount at issue. Black's Law Dictionary defines a small claims court as "[a] court

that informally and expeditiously adjudicates claims that seek damages below a specified monetary amount, usually claims to collect small accounts or debts." *Court: Small-Claims Court*, Black's Law Dictionary (11th ed. 2019). There is no need for the agreement to define what a small claims court is.

Plaintiffs argue that a small claims court could be the lowest court in which to bring a claim. If so, the value of Plaintiffs' claim exceeds the statutory maximum for a small claims court, that court would lack jurisdiction, and the provision is vague. Plaintiffs contend the Tennessee General Sessions Court could be a small claims court, but this case would exceed the jurisdictional limits of that court.

Small claims courts in some states have maximum recovery amounts, such as $6,000 or $10,000. See e.g., Mich. Comp. Laws Ann. § 600.8401 (setting the jurisdictional maximum at $6,000); Ind. Code Ann. § 33-29-2-4 (setting the jurisdictional maximum at $8,000); Okla. Stat. Ann. tit. 12, § 1751 (setting the jurisdictional maximum at $10,000). The Tennessee General Sessions Court has jurisdiction over claims up to $25,000. <u>See Ciccio v. SmileDirectClub, LLC</u>, No. 3:19-cv-00845, 2019 WL 8298262 at *1 n 1 (M.D. Tenn. Dec. 2, 2019) (noting Tennessee judicial statues do not discuss small claims courts, but the General Sessions Court handles small claims up to $25,000); Tenn. Code Ann. § 16-15-501. At least one court has considered the

General Sessions Court a small claims court in Tennessee.  See Ciccio, 2019 WL 8298262 at *1 n 1.

Whether the Tennessee General Sessions Court is a small claims court and whether Plaintiffs could have brought their claims in General Sessions Court are not determinative.  First, the definition of small claims court includes more than the monetary limit on claims before it.  Second, that the potential "small claims court" remedy may be unavailable to Plaintiffs because of the nature and amount of their claims does not make the arbitration agreement vague.

Even if Plaintiffs were correct and the provision in the arbitration agreement permitting claims to be brought in small claims court were vague, that provision would be severable.  The applicable state law of contract formation determines the enforceability of an arbitration agreement.  Morrison v. Circuit City Stores, Inc., 317 F.3d. 646, 666 (6th Cir. 2003).  A void arbitration clause may be severed from the rest of an arbitration agreement under Tennessee law.  Brubaker v. Barrett, 801 F. Supp. 2d 743, 756 (E.D. Tenn. 2011), (citing Chapman v. H&R Block Mort. Corp., No. E2005-00082-COA_R3-CV, 2005 WL 3159774 at *8 (Tenn. Ct. App. Nov. 28, 2005)).  Whether an arbitration clause should be severed under Tennessee law is based on the intent of the parties.  Brubaker, 801 F. Supp. 2d at 756, (citing Bratton v. Bratton, 136 S.W.3d 595, 602 (Tenn. 2004)).

The provision permitting Plaintiffs to bring a claim before a small claims court is severable from the arbitration agreement if the Court finds that the provision is void.  The arbitration agreement provides that, "you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration. . ." (D.E. No. 11-13, p.3.) The arbitration agreement later provides an exception that, "[i]f you prefer, you may instead take an individual dispute to small claims court."  (Id.)  The arbitration agreement also contains a severability clause which provides that if "any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief) then that claim or remedy (and only that claim or remedy) shall be severed. . ."  (Id.)

The provision requiring arbitration unambiguously demonstrates that the parties intended their disputes to be arbitrated.  The provision permitting a small claims court as an alternative forum, in contrast, uses permissive language and does not modify the arbitration agreement's clear language demonstrating that arbitration is the default standard for disputes under the agreement.  The two do not conflict.  Even given a conflict, however, the severability clause would permit the severing of claims and remedies such as equitable and

injunctive relief.  It would permit the severing of the "small claims court" remedy as well.  None of Plaintiffs' arguments for vagueness is meritorious.  Even if those arguments had merit, the vague provision would be severable.

### C.   Waiver of Arbitration Agreement

Plaintiffs argue that Defendants have waived their right to arbitrate by their proceedings in this Court.  That argument is not well taken.

A party may waive its right to arbitration.  "A party implicitly waives its arbitration right" "when (1) the party's acts are 'completely inconsistent' with its arbitration right and (2) the party's conduct is prejudicial to an opposing party—for example, when the party significantly delays asserting its arbitration right."  Borror Property Management, LLC v. Oro Karric North, LLC, --F.3d-- (6th Cir. 2020); 2020 WL 6336316 at *2.  The party asserting waiver must demonstrate both that there was inconsistency and that there was actual prejudice.  Shy v. Navistar Intern. Corp., 781 F.3d 820, 828 (6th Cir. 2015).  A party removing a case to federal court does not waive arbitration.  Dantz v. American Apple Group, LLC, 123 Fed. Appx. 702, 707 (6th Cir. 2005) ("mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitration."); Andrews v. TD Ameritrade, Inc., 596 Fed. App'x. 366, 371 (6th Cir. 2014) ("Removal to

16

federal court does not waive a party's otherwise enforceable right to arbitrate.").

Plaintiffs argue that Defendants waived their right to arbitrate by removing to federal court because Defendants selected the forum in which they wished to defend. Removal does not automatically waive arbitration. See Andrews, 596 Fed. App'x. at 371. Plaintiffs assert that Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334 (6th Cir. 2010), stands for the proposition that a defendant's use of procedural tools to select the forum for the case demonstrates an intent to litigate the case in that forum. That argument is unpersuasive. In Hurley, the court held that, because the defendant litigated the case for two years, filed dispositive motions without referencing the arbitration agreement, and filed a motion to change venue, the defendant's actions were "completely inconsistent with any reliance on an arbitration agreement." See Hurley, 610 F.3d at 338-340. Plaintiffs rely on KenAmerican Resources, Inc. v. Potter Grandchildren, LLC, 916 F.Supp.2d 799 (E.D. Ky. 2013), for the proposition that a party seeking removal waives its right to arbitration. KenAmerican analyzed waiver in the context of the plaintiff's filing the complaint, the defendant's removing the case, and the plaintiff then seeking to enforce the arbitration agreement against the defendant. KenAmerican, 916 F.Supp.2d at

17

801-802.  Neither Hurley nor KenAmerican supports Plaintiffs'
argument.  The defendant in Hurley actively litigated the case
for two years.  The plaintiff in KenAmerican initiated the case
in contravention of the arbitration agreement the plaintiff later
asserted.  Defendants did not waive arbitration by removing to
federal court.

Plaintiffs next argue that, even if removal alone does not
constitute waiver, the combination of Defendants' removing the
case, filing corporate disclosures, and filing a motion to extend
time to file a response was completely inconsistent with
Defendants' arbitration right.  The Sixth Circuit has held that
a party's actions are completely inconsistent with arbitration
when it fails to raise arbitration in its answer, asserts a
counterclaim for breach of contract, and schedules and requests
discovery after the end of formal settlement discussions.
Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 718-
719 (6th Cir. 2012).  A delay of more than a year while actively
participating in litigation is completely inconsistent with the
right to arbitrate a case.  See Hurley, 610 F.3d at 338-339
(holding the defendants waived their right to arbitration by
actively litigating the case for two years and filing dipositive
motions before asserting arbitration); Manasher v. NECC Telecom,
310 Fed. App'x 804, 806 (6th Cir. 2009) (the defendant "waived

whatever right to arbitrate it may have had by failing to plead arbitration as an affirmative defense and by actively participating in litigation for almost a year without asserting that it had a right to arbitration.").

Defendants' actions were not completely inconsistent with their right to arbitrate this case. None of Defendants' motions or proceedings is based on the merits of the case. Defendants have not filed any dispositive motions or any motions addressing the merits of the case. Defendants requested an extension of time because of the difficulty they experienced during the COVID-19 Pandemic. (See D.E. No. 9, ¶ 4.) A motion on that basis is not completely inconsistent with Defendants' assertion of their right to arbitrate.

Defendants were required to file their corporate disclosure statement under Rule 7.1. Fed.R.Civ.P Rule 7.1. Corporate disclosure statements are necessary to inform the Court about possible judicial disqualification. See Plotzker v. Lamberth, 3:08cv00027; 2008 WL 4706255 at *12 (W.D. Va. 2008) ("[t]he purpose of the disclosure statements required by Rule 7.1 is to assist the court in making decisions about possible disqualification"); Fed.R.Civ.P. Rule 7.1, Notes of Advisory Committee on 2002 Amendments ("This information will support

properly informed disqualification decisions in situations that call for automatic disqualification under Canon 3C(1)(c)").

In cases where courts have found a party waived arbitration by actions completely inconsistent with arbitration, the waiving party filed dispositive motions or failed to assert arbitration and proceeded with discovery and counterclaims.  In this case, Defendants filed the Motion to Compel before answering.  (See D.E. No. 11.)  There had been no discovery. There had been no counterclaims.  Defendants did not delay for a year or more after Plaintiffs filed the case before Defendants asserted their right to arbitration.  Defendants moved for arbitration within two months of Plaintiffs' filing the Complaint.  (See D.E. No. 1; D.E. No. 11.)  Defendants' actions are not completely inconsistent with their right to arbitrate.

A party asserting waiver of an arbitration agreement must show it suffered prejudice.  "In the arbitration setting, prejudice tends to arise only after the wheels of justice have begun to turn."  Borror, --F.3d-- at --; 2020 WL 6336316 at *3. Prejudice can result from a party's spending time or money litigating the case before the other party asserts arbitration, or from one party using litigation to gain the upper hand and then invoking arbitration.  Id.  In Borror, the court held that defendant did not waive its right to arbitration, although

defendant's pre-litigation letter to plaintiff said that defendant would proceed to litigation and that plaintiff needed to notify defendant within six days if plaintiff preferred to arbitrate. Id. The court concluded that plaintiff did not suffer prejudice because defendant's letter did not cost the plaintiff time or money or cause any other disadvantage. Id.

Defendants' conduct has not been prejudicial to Plaintiffs. Plaintiffs' entire argument for prejudice is that Defendants did not respond to Plaintiffs' December 27, 2019 letter requesting a resolution of this matter. (See D.E. No. 12-1, 15-16.) That letter was mailed before litigation. (See D.E. No. 1-2.) Plaintiffs then chose to litigate. Plaintiffs have not had to engage in discovery or file responses to motions other than this Motion to Compel. The case has not been referred to the Magistrate Judge, and no scheduling order has been entered. Plaintiffs have not been harmed by Defendants' failure to respond to Plaintiffs' pre-litigation letter. Plaintiffs' argument that Defendants waived their right to arbitration is not well taken. Plaintiffs have not met their burden to show that the validity of the arbitration agreement is at issue.

### D. Dismissal of Case Pending Arbitration

Defendants ask that the Court to dismiss this case pending arbitration. (D.E. No. 11-1.) Plaintiffs have not addressed

this issue.  (See D.E. No. 12-1.)  The alternative to dismissal would be to stay the case.  Whether to dismiss or stay is within the Court's discretion.  See Ozormoor v. T-Mobile USA, Inc., 354 Fed. App'x. 972, 975 (6th Cir. 2009) (rejecting the argument that district courts were required to stay suits pending arbitration rather than dismiss them); Moore v. Ferrellgas, Inc., 533 F.Supp.2d 740, 751 (W.D. Mich. 2008) ("the Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable.").  All of Plaintiffs' claims are subject to arbitration.  Dismissal is the appropriate remedy.

## V.   Conclusion

Defendants' Motion to Compel Arbitration is **GRANTED.**  This case is **DISMISSED WITHOUT PREJUDICE** to the parties' right to re-open it for entry of an arbitration award or for any other relief to which the parties may be entitled.  The parties are directed to proceed to arbitration in accordance with the terms of their agreement.

SO ORDERED this 2nd day of December, 2020.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE